1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  MARY L. ALEXANDER,              )   NO. EDCV 12-00104 SS
                                    )
12              Plaintiff,          )
                                    )
13       v.                         )
                                    )   **MEMORANDUM DECISION AND ORDER**
14  MICHAEL J. ASTRUE,              )
    Commissioner of the Social      )
15  Security Administration,        )
                                    )
16              Defendant.          )
    _____     )
17
                                    **I.**
18
                              **INTRODUCTION**
19

20       Mary Alexander ("Plaintiff") brings this action seeking to overturn

21  the decision of the Commissioner of the Social Security Administration

22  (the "Commissioner") denying her application for Supplemental Security

23  Income ("SSI") benefits.   On January 18, 2012, Plaintiff filed a

24  complaint (the "Complaint") commencing the instant action.   On June 13,

25  2012, Defendant filed an Answer to the Complaint (the "Answer").   The

26  parties have consented to the jurisdiction of the undersigned United

27  States Magistrate Judge pursuant to 28 U.S.C. § 636(c).   For the reasons

28  stated below, the decision of the Commissioner is AFFIRMED.

## II.

### PROCEDURAL HISTORY

On August 24, 2009, Plaintiff filed an application for SSI benefits under Title XVI. (Administrative Record ("AR") 119). Plaintiff was born on April 18, 1959. (AR at 119). She alleges disability beginning on July 1, 2009, due to morbid obesity, ambulation problems, abdominal hematoma, asthma, bronchitis, and pulmonary saddled embolism.[1] (AR at 41, 77, 119, 277-80). The Commissioner denied Plaintiff's SSI application initially and upon reconsideration. (AR 14-26, 77-81).

Plaintiff requested and participated in a hearing before an Administrative Law Judge ("ALJ") on August 11, 2010. (AR at 34-36, 37-72, 73, 84). At the hearing, Plaintiff, represented by counsel, appeared and testified. (AR 37-72). On September 11, 2010, the ALJ issued an unfavorable decision, finding Plaintiff to have several severe impairments, but still having the residual functional capacity to perform light work. (AR 14-23). The ALJ concluded that Plaintiff was capable of performing her past relevant work as an insurance clerk, secretary, or data entry clerk. (AR 14-23). On October 1, 2010, Plaintiff requested review of the ALJ's decision before the Appeals Council. (AR 118). On November 21, 2011, the Appeals Council denied

---

[1] A pulmonary embolism is an obstruction of a blood vessel in the lungs, usually due to a blood clot, which blocks a coronary artery. Free Online Medical Dictionary http://medical-dictionary.thefreedictionary.com/pulmonary+embolism (last visited Nov. 13, 2012). An embolism is "saddled" when it is positioned across the arterial bifurcation and thus blocks both branches. See Medical Dictionary http://dictionary.reference.com/browse/saddle+embolus (last visited Nov. 13, 2012).

1  Plaintiff's request for review, making the ALJ's decision the final

2  decision of the Commissioner.  (AR 1-6).  Plaintiff requested judicial

3  review by filing the instant action.

4

5                              **III.**

6                        **FACTUAL BACKGROUND**

7

8  **A.    Plaintiff's Medical History**

9

10  Medical records indicate that Plaintiff presented to Centinela

11  Hospital in July 2009 due to a pulmonary embolism.[2]  (AR 273-95).  While

12  at Centinela, Plaintiff was diagnosed with morbid obesity.  (AR 277-

13  80).  She was started on a Heparin drip and Coumadin.  (AR 277).  After

14  being released from Centinela, Plaintiff failed to comply with a

15  Coumadin prescription and deteriorated.  (AR 264-72).  As a result,

16  Plaintiff was admitted to UCLA Medical Center on July 11, 2009.  (AR

17  265).  Upon admission, Plaintiff had a deep edema in the bilateral

18  ankles.  (AR 266).  A CT scan of the abdomen revealed clots in the left

19  lower pulmonary arterial branches and a large hematoma ranging from the

20  lower chest to the pelvis.  (AR 248).  An August 2009 CT scan of

21  Plaintiff's chest indicated that the clots were resolving.  (AR 231).

22

23  Additionally, Plaintiff has also been diagnosed with seasonal

24  asthma.  (AR 309-23).  However, it appears that the shortness of breath

25  Plaintiff experienced in July 2009 was the result of the pulmonary

26

27        [2]   Defendant has stipulated, (Memorandum in Support of Defendant's
Answer 3), and Plaintiff has not objected, to adopting the summary of
28  the testimony and medical evidence set forth in the ALJ's September 11,
2010, decision.  (AR 14-23).

embolism and not from asthma.   (AR 20).   Plaintiff was nonetheless advised to avoid working in environments that would aggravate the intermittent breathing difficulties she was experiencing.   (AR 20).

Finally, South Bay medical records state that Plaintiff had surgery on her left ankle in October 2009 to repair a fracture, but there is nothing in the record to suggest that Plaintiff has any continuing ankle pain or gait problems.   (AR 20).   Additionally, Plaintiff was diagnosed with having high cholesterol, but this condition is controlled with medication.   (AR 47).

**B.    Plaintiff's Testimony**

Plaintiff testified on August 11, 2010, before the ALJ.   (AR 37-72).   Plaintiff stated that she is unable to work because she "can't sit for a long time" due to severe pain "in [her] back and [her] right hip." (AR 46).   She also testified that her arthritis keeps her from working. (See AR 46).   Plaintiff is being treated at South Bay Family Health Care for high blood pressure, asthma and bronchitis.   (AR 46).   She was first treated for a pulmonary embolism on July 1, 2009.   (See AR 48-49). Plaintiff drives infrequently, approximately a "[c]ouple times a week." (AR 44).   Plaintiff testified that she has decreased her household activities.   (AR 51).   However, she continues to perform some household chores, as long as she is able to take breaks.   (See AR 51-52).

Plaintiff owns three inhalers for her asthma that she uses twice a day.   (AR 53-54).   The last time she was hospitalized for difficulties in breathing was in 2009, when she received a breathing treatment.   (AR

4

54).  She stated that she could stand for about thirty minutes, and would have to sit down six to eight times during an eight-hour day.  (AR 54-55).  She believes she could only sit for two hours at a time before needing to get up and move.  (AR 55).  However, Plaintiff stated that she could walk up to three blocks "on a good day." (See AR 55).

## C.  **Vocational Expert's Testimony**

On August 11, 2010, vocational expert ("VE") Ms. June Hagan testified at a hearing before the ALJ. (AR 64-72).  The VE identified Plaintiff's past relevant work as an insurance clerk, secretary and data entry clerk. (AR 69).  The ALJ posed the following hypothetical[3] to the VE:

> If you took another individual of the same age and educational background of the claimant, and that individual could on occasion lift at least [ten] pounds, who could frequently lift and carry less than [ten] pounds, was able to stand and walk for at least two hours in an eight-hour workday, could sit for at least six hours in an eight-hour workday, who could occasionally climb, balance, stoop, kneel, crawl, and crouch, never use ladders, ropes, or scaffolds, also need to avoid concentrated exposure to fumes and other pulmonary irritants in the workplace, as well as industrial

_____

[3]   The ALJ also posed a hypothetical with less restrictions (i.e., the individual could lift twenty pounds), and the VE testified that the individual could do all of the Plaintiff's past relevant work. (AR 70).

1    hazards.  Could that individual do any of the claimant's past
2    relevant work?  (AR 70).

3

4    The VE responded, "Yes, all of it."  (AR 70).  Plaintiff's attorney
5    posed a similar hypothetical, but with the added facts of a claimant who
6    "would be off-task two hours per day because of pain, side effects of
7    medications, and other symptoms."  (AR 71).  The VE responded that such
8    a claimant would not have any work available.  (See AR 71).  Plaintiff's
9    attorney presented a follow up hypothetical with the additional facts
10   of a claimant who "would miss three days of work per month because of
11   the same symptoms."  (AR 71).  Again, the VE responded that such a
12   claimant would not have any work available.  (See AR 71).

13

14                              **IV.**
15              **THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

16

17       To qualify for SSI, a claimant must demonstrate  a medically
18   determinable impairment that prevents her from engaging in substantial
19   gainful activity[4] and that is expected to last for a continuous period
20   of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th
21   Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must
22   render the claimant incapable of performing the work she previously
23   performed and incapable of performing any other substantial gainful
24   employment that exists in the national economy.  Tackett v. Apfel, 180
25   F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

26

27   _____
        [4]   Substantial gainful activity means work that involves doing
28   significant and productive physical or mental duties and is done for pay
     or profit.  20 C.F.R. §§ 404.1510, 416.910.

                                    6

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

\\

\\

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[5] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

\\

\\

\\

\\

\\

---

[5]     Residual functional capacity is "what [one] can still do despite [her] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

# V.

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above.  At the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the date of application, August 10, 2009.  (AR 19).  Second, the ALJ found that Plaintiff suffers from the following severe impairments: asthma, obesity and status post pulmonary embolism currently controlled by anticoagulants.  (AR 19).  The ALJ determined that these impairments "cause more than minimal restrictions."  (AR 19).

At the third step, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 20).  The ALJ noted that Plaintiff's impairments do not meet or medically equal the criteria of listing level of severity for a pulmonary disorder, including COPD, pulmonary embolism or asthma.  (AR 20).  The ALJ emphasized that Plaintiff "has not experienced frequent attacks, in spite of prescribed treatment," and that Plaintiff has not required physician intervention, occurring at least once every two months or at least six a year, as required by listing 3.02.  (AR 20).  Furthermore, the ALJ noted that because there is no separate listing for obesity, when considered for its effects on the musculature, cardiovascular or respiratory systems, it does not satisfy any listing in sections 1.00, 3.00 or 4.00 for the instant case.  (AR 21).

9

Before proceeding to the fourth step, the ALJ considered Plaintiff's RFC. In doing so, the ALJ considered all symptoms and the extent to which the symptoms can be reasonably accepted as consistent with the objective medical evidence and other record evidence. (AR 21). The ALJ found Plaintiff's testimony concerning the intensity, persistence and limiting effects of the symptoms was not credible, especially in light of the medical evaluations. (AR 21). Plaintiff alleged she cannot work "due to back and right hip pain, and arthritis." (AR 21). Plaintiff also claimed that her high blood pressure, asthma, obesity, high cholesterol, and chronic inhaler use contribute to her inability to work. (See AR 21). However, the ALJ noted that Plaintiff is able to "stand for [thirty] minutes, sit for two hours and lift five to [ten] pounds." (AR 21). Plaintiff rests during the day for one to two hours, but can also walk one half to two blocks "depending on how she feels." (AR 21).

Plaintiff reported being able to walk two blocks twice a day and could lift five to ten pounds. (AR 22). Her testimony reflects her ability to perform "light household tasks such as vacuuming, straightening the room and mopping." (AR 22). There are no medical records to reflect Plaintiff's need to restrict any daily activities due to chronic pain and fatigue and "no doctor recommended that she reduce any activity." (AR 22). Moreover, the record did not substantiate that Plaintiff has osteoarthritis and "there is no evidence that arthralgias have cause[d] any vocationally relevant restrictions." (AR 22). The ALJ also noted that the medical records as a whole do not indicate any deterioration in Plaintiff's condition. (See AR 22).

After carefully considering the evidence, the ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the symptoms are not credible to the extent they are inconsistent with the RFC assessment. (AR 21). Thus, the ALJ found that Plaintiff has the RFC "to perform light work." (AR 21). This includes lifting or carrying twenty pounds occasionally and ten pounds without restriction. (AR 21). However, Plaintiff should not climb ladders or scaffolds, should avoid pulmonary irritants, and should not work around hazards. (AR 21).

At step four, after addressing Plaintiff's functional limitations, the ALJ determined that Plaintiff "is capable of performing her past relevant work as an insurance clerk, secretary or data entry clerk." (AR 22). Therefore, the ALJ concluded that Plaintiff is not disabled, as defined in the Social Security Act, since the application's filing date of August 10, 2009. (AR 23).

## VI.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

1  "Substantial evidence is more than a scintilla, but less than a
2  preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater,
3  112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which
4  a reasonable person might accept as adequate to support a conclusion."
5  Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To
6  determine whether substantial evidence supports a finding, the court
7  must "'consider the record as a whole, weighing both evidence that
8  supports and evidence that detracts from the [Commissioner's]
9  conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2
10 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support
11 either affirming or reversing that conclusion, the court may not
12 substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d
13 at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## VII.

### DISCUSSION

**The ALJ Provided Clear And Convincing Reasons For Rejecting
Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ did not properly consider Plaintiff's
testimony. (Memorandum in Support of Plaintiff's Complaint ("Mem. Supp.
Pl.'s Compl." 4).  The Court disagrees.

Plaintiff asserts that in the absence of evidence that she is
malingering, "the Commissioner has the burden of articulating clear and
convincing reasons for rejecting the claimant's testimony regarding her
subjective symptoms."  (Id. at 6).  Plaintiff contends that the ALJ

12

failed to point to any evidence of malingering. (Id. at 10). Plaintiff argues that the ALJ improperly rejected her statements and testimony regarding her subjective symptoms by failing to "provide clear and convincing reasons." (See id. at 6). This contention lacks merit.

To determine whether a claimant's testimony regarding subjective pain or the intensity of symptoms is credible, an ALJ must engage in a two-step analysis. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant "has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The claimant, however, need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (internal quotation marks omitted).

Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can only reject the claimant's testimony about the severity of [her] symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." Id. However, the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair, 885 F.2d at 603). Furthermore, in evaluating the claimant's testimony, the ALJ may use "'ordinary techniques of credibility evaluation.'" Turner v.

Comm'r of Soc. Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010) (quoting Smolen, 80 F.3d at 1284). For example, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, see id.; "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment,'" Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284); and "whether the claimant engages in daily activities inconsistent with the alleged symptoms," Lingenfelter, 504 F.3d at 1040.

Moreover, while "a claimant need not 'vegetate in a dark room' in order to be eligible for benefits," Molina, 674 F.3d at 1112-13 (quoting Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)), the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113 (citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999). Even where those activities suggest some difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. Molina, 674 F.3d at 1113; see also Tuner, 613 F.3d at 1225.

Plaintiff's objective medical evidence demonstrates that she suffers from severe impairments. Medical records from South Bay Family Health Care, (AR 209-16, 314-23), and Harbor UCLA Medical Center, (AR 224), substantiate Plaintiff's asthma condition. Plaintiff was also diagnosed with obesity at South Bay Family Health Care, (AR 212, 319), and at Harbor UCLA Medical Center (270). Moreover, all three medical

14

centers diagnosed Plaintiff with a pulmonary embolism. (AR 224-31, 246-48, 255, 266-81, 294-95, 307, 317-18).

Accordingly, the ALJ was required to provide specific, clear and convincing reasons to reject Plaintiff's testimony regarding the severity of her symptoms. The ALJ met this standard. The ALJ properly rejected Plaintiff's testimony by relying upon medical evidence and "ordinary techniques of credibility evaluation" to provide specific, clear and convincing reasons, supported by the record, that Plaintiff's testimony was generally not credible. See Turner, 613 F.3d at 1224 n.3; see also Magallanes v. Brown, 881 F.2d 747, 756 (9th Cir. 1989) (allowing the ALJ to take into account a claimant's level of activity, along with other probative evidence of disability or lack thereof, when evaluating claimant's subjective testimony).

The ALJ noted that Plaintiff's medical records do not corroborate her allegations of severe chronic pain or fatigue and did not provide evidence of any deterioration in Plaintiff's condition. (AR 22). On the contrary, a medical progress note indicated that Plaintiff reported no complaints while on Warfarin. (See AR 310). The ALJ further noted that Plaintiff has never been diagnosed with osteoarthritis, decreased back or leg ranges of motion, muscle atrophy, osteoporosis, severe ankle impairment, or severe pulmonary disorder requiring physician intervention and the absence of these diagnoses undermine Plaintiff's subjective testimony. (See AR 20). The ALJ also observed that no doctor had recommended any reduction in Plaintiff's activity. (AR 22). Although a lack of medical evidence alone is insufficient for an ALJ to reject a claimant's credibility, Bunnell v. Sullivan, 947 F.2d 341, 345

1  (9th Cir. 1991), it may be considered if there are additional grounds
2  for rejecting credibility.  See id. at 346-47.

3

4      Furthermore, even though Plaintiff testified that for pain
5  management she was allowed to take only Extra Strength Tylenol due to
6  her Warfarin prescription, (AR 57), the ALJ noted that the medical
7  records do not demonstrate that Plaintiff ever inquired about
8  alternative pain management solutions.  (AR 22).  "[I]f a claimant
9  complains about disabling pain but fails to seek treatment . . . an ALJ
10 may use such failure as a basis for finding the complaint unjustified
11 or exaggerated."  Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007)
12 (citing Fair, 885 F.2d at 603).  Moreover, most of Plaintiff's medical
13 visits were for prescription medication refills.  (AR 209-10, 214, 217,
14 307, 309, 314-16, 321).  Consequently, the ALJ reasonably found that
15 medical evidence did not support Plaintiff's claims.

16

17     The ALJ also relied on "ordinary techniques of credibility
18 evaluation" in supporting his adverse credibility determination.  See
19 Smolen, 80 F.3d at 1284 (ALJ may consider ordinary techniques of
20 credibility evaluation, such as prior inconsistent statements and other
21 testimony by the claimant that appears less than candid, to determine
22 credibility).  The ALJ noted that Plaintiff is able to walk two blocks
23 twice a day, as she testified at her August 11, 2010, hearing.  (AR 22;
24 see also id. at 55).  The ALJ also referred to Plaintiff's capacity to
25 lift five to ten pounds and perform light household tasks "such as
26 vacuuming, straightening the room and mopping."  (AR 22, 55, 179).
27 Plaintiff's ability to perform such tasks undermines her claims that her
28 impairments were severe as these everyday physical activities indicate

that Plaintiff has capabilities that are transferable to a work setting. See Molina, 674 F.3d at 1113 (citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); see also Tommasetti, 533 F.3d at 1039 (stating that the ALJ may consider claimant's daily activities as one of many factors in determining claimant's credibility).

Additionally, the ALJ may also consider an "unexplained or inadequately explained failure to . . . to follow a prescribed course of treatment" as a factor in weighing a claimant's credibility. Id. (quoting Smolen, 80 F.3d at 1284). While it does not appear that such considerations were the primary grounds for the ALJ's decision, the ALJ did note that Plaintiff failed to follow prescribed courses of treatment. For example, the ALJ observed that Plaintiff had failed to fill her prescription for Coumadin, and several medical records reflected this failure. (AR 19, 265, 268, 271-72). The ALJ also noted the effect that Plaintiff's continued obesity may have had on her other impairments, pursuant to SSR 02-1p.[6] (AR 19). At the time the ALJ rendered his decision, Plaintiff still weighed 295 pounds. (AR 20). Plaintiff testified that doctors had instructed her to lose weight and to speak with a nutritionist and admitted that doing so would be in her "best interest." (AR 60). The ALJ acknowledged that while obesity "commonly leads to, and often complicates chronic diseases . . . [t]he

---

[6] Plaintiff argues that "an obese individual's failure to lose weight is not one [sic] to be held against them." (Plaintiff's Memo. at 10) (citations omitted). Here, the ALJ considered the impact of Plaintiff's obesity, and noted that she did not "seek weight control," but these observations were not the reasons the ALJ rejected Plaintiff's pain testimony, and it is not an accurate characterization of the ALJ's entire decision to suggest that the ALJ "held against" Plaintiff her failure to lose weight.

fact that obesity is a risk factor for other impairments does not mean that individuals with obesity necessarily have any of these impairments." (AR 19). However, the ALJ noted that obese individuals are at a greater than average risk for developing other impairments. (AR 19).

Thus, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's claims about the severity of her symptoms. See Vasquez, 572 F.3d at 591. Because the ALJ's credibility finding is supported by substantial evidence in the record, this Court will not second-guess that determination. See Tommasetti, 533 F.3d at 1039 (quoting Thomas, 278 F.3d at 959); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld). Accordingly, remand is not required on this issue.

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner and dismissing this action with prejudice. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 4, 2011.

                                    /S/
                                    _____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE

18